UNITED STATES DISTRICT COURT
SOTHERN DISTRICT OF NEW YORK
_____
                                        )
DOREEN BENSON,                          )
                                        )
            Plaintiff,                  )     04 Civ. 7323
                                        )
      v.                                )
                                        )
LEHMAN BROTHERS INC.,                   )
                                        )
            Defendant.                  )
__ _____)


**MEMORANDUM OF LAW OF PLAINTIFF
IN OPPOSITION TO MOTION BY DEFENDANT,
<u>LEHMAN BROTHERS INC., TO COMPEL ARBITRATION</u>**

**Lewis D. Thompson
Attorney at Law
Suite K-7
105 New England Avenue
Summit, NJ 07901**

Table of Contents

Page

TABLE OF AUTHORITIES………………………………………………………………...……2

FACTUAL BACKGROUND…………………………………………………………………..……4

ARGUMENT…………………………………………………………………………………...…6

    I.    THE ARBITRATON CLAUSE OF THE EMPLOYMENT
        APPLICATION IS VOID BECAUSE IT IS BOTH PROCEDURALLY
        AND SUBSTATNTIVELY UNCONSCIONABLE…….……………………….…..6

        A.    Policy on Arbitration Agreements Contained in
                Employment Contracts………….……………………………………...6

        B.    The Applicable Legal Standard for Compelling Arbitration….…………..6

        C.    The Enforceability of the Employment Agreement was Vitiated
                by Procedural and Substantive Unconscionability……….…..…………7

                1.    The Test for Unconscionability……………………..…………..7

                2.    The Execution of the Employment Application Was Induced
                      by Deceit and Coercion on the Part of Lehman………………...7

                3.    There is a Structural Bias in Lehman's Arbitration Clause
                      Because it Deprives the Employee of a Neutral Arbitral Forum….8

                4.    Summary……………………………………………………..9

    II.    PLAINTIFF HAS A RIGHT TO CONDUCT DISCOVERY BEFORE
         THE ISSUE OF ARBITRABILITY IS DECIDED……………………………....9

        A.    A Motion to Compel Arbitration is to be Treated Similar to
                a Motion for Summary Judgment………………………………….……9

        B.    Compulsory Arbitration, Like Summary Judgment, May Not
                Be Granted Where There Are Genuine Issues of Material Fact………….10

    III.    PLAINTIFF'S ACTION SHOULD NOT BE DISMISSED BECAUSE
          THE DEFENSE HAS SET FORTH NO VALID REASON OR BENEFIT
          FOR DOING SO……………………………………………………………..…10

    IV    CONCLUSION…………………………………………………….…..……11

Table of Authorities

Cases                                                                                                                    Page

Anderson v. Liberty Lobby, Inc.,
477 US 242, 250, 91 L.Ed.2d 202, 106 S.Ct. 2505 n.5 (1986)…..……………………….....10

Brennan v. Bally Total Fitness,
198 F.Supp.2d 377, 382 (S.D.N.Y. 2002)……………………………………….......................................................7, 8

Celotex Corp. v. Catrett,
477 U.S. 317, 324, 91 L.Ed.2d 265, 106 S.Ct. 25(1986)………………………………….....10

Chandler v. Aero Mayflower Transit Co.,
374 F.2d 129, 136 (4th Cir. 1967)……………………………………………………….....8

Egan v. Kollsman Instrument Corp.,
21 N.Y.2d 160, 168-69, 287 N.Y.S.2d 14, 19, 234 N.E.2d 199, 202-3, (1967) *cert. denied*……..8

First Options of Chicago, Inc. v. Kaplan,
514 US 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)………………………………...…..7

Genesco, Inc. v. T. Kakiuchi & Co.,
815 F.2d 840, 844 (2nd Cir. 1987)………………………………………………………...…..7

Gilmer v. Interstate/Johnson Lane Corp.
500 U.S. 20, 36, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)…………………………………...…..6

Goodman v. ESE America, Inc.,
2001 U.S. Dist LEXIS 433 at 2 (E.D. Pa. Jan. 19, 2001)……………………………………....9

Halligan v. Piper Jaffray, Inc.,
148 F.3d. 197, 203 (2nd Cir. 1998)……………………………………………………...…..9

Hellstrom v. U.S. Dept. of Veterans Affairs,
201 F.3d 94, 97 (2nd Cir. 2000)…………………………………………………………….....10

Moses H. Cone Hospital v. Mercury Construction Corp.
460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)……………………………….....…..6

Oldroyd v. Elmira Sav. Bank, FSB,
134 F.3d 72, 75-76 (2nd Cir. 1998)……………………………………………………...……7

2

Patricia P. v. Board of Education,
203 F.3d 462, 469-70 (7th Cir. 2000)……………………………………………….…..9

Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,
991 F.2d 42, 46 (2nd Cir. 1993)……………………..…………………………………..7

Sutera v. Schering Corp.,
73 F.3d 13, 18 (2d Cir.1995)……..………………..…………………………………10

Trebor Sportswear Co., Inc.v. The Limited Stores, Inc.,
865 F.2d 506, 511, n.3 (2nd Cir.1989)…………………...……………………….....…10

Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.,
489 U.S. 468, 478 (1989)…………………………………………………………….....8

Statutes                                                                                                                             Page

9 U.S.C. § 1 *et seq*…………….………………………………………………………..6

Federal Rules of Civil Procedure                                                                               Page

R. Civ. P. 56(e) advisory committee's note (1963)….…………………………………..10

UNITED STATES DISTRICT COURT
SOTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| DOREEN BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | 04 Civ. 7323 |
| | ) | |
| v. | ) | |
| | ) | |
| LEHMAN BROTHERS INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MEMORANDUM OF LAW OF PLAINTIFF
## IN OPPOSITION TO MOTION BY DEFENDANT,
## LEHMAN BROTHERS INC., TO COMPEL ARBITRATION

Plaintiff Doreen Benson respectfully submits this memorandum of law in opposition to the motion by the Defendant, Lehman Brothers, Inc. ("Lehman"), to compel arbitration of plaintiff's claims and to dismiss the complaint against Lehman.

### FACTUAL BACKGROUND

Plaintiff commenced her employment with Lehman in November, 1997. During plaintiff's first day at work at Lehman, she met with a representative from the Human Resources Department at Lehman (the "HR Rep") who sat down with her in a conference room and asked the plaintiff to sign numerous papers. Affidavit of Doreen Benson, Exhibit A to this memorandum of law ("Benson Affidavit"). One of those documents was the Lehman Application for Employment (the "Employment Application"). Benson Affidavit, Exhibit A. In her affidavit the plaintiff averred that: (1) "on the day that I commenced work at Lehman, in November, 1997, I was processed in a group of 12 to 15 other new hires"; (2) "we were placed in a conference room at Lehman and each given a

4

large stack of papers to sign"; (3) "with the exception of the health insurance forms, we were given no explanation of what any of the documents were or of their particular significance"; (4) "we were all pressured to sign the papers immediately without having had a chance to read or to understand any of the contents of any of these documents"; (5) "no mention was made to us by the HR Rep of the inclusion of an arbitration clause in the Employment Application or its potential significance"; (6) "no mention was made to us by the Human Resources personnel at Lehman that we could or should take our time and consult our own legal counsel before signing any of the documents in that room"; (7) "in summary, we were pressured to sign the papers and leave the room as soon as possible"; and (8) "one of these papers that we were pressured to execute so rapidly was Lehman's Employment Application (the "Employment Application") which contained, as I learned later, a provision mandating all disputes between Lehman Brothers and its employees to binding arbitration and that the arbitration provision contained in the Employment Application mandated that such arbitration only be conducted before three forums: The New York Stock Exchange, the American Stock Exchange, or the National Association of Securities Dealers ("NASD")." Id.

As such, there was absolutely no understanding of, or assent to, this provision by the plaintiff.

The provisions of the Arbitration Clause limit the arbitral forums to only those provided by the New York Stock Exchange ("NYSE"), the American Stock Exchange ("ASE") or the National Association of Securities Dealers ("NASD"). None of these self regulatory organizations ("SRO's) are independent, neutral third parities but are all owned, in part, by securities firms such as, and including, Lehman. This arbitration system is structurally biased and inequitable.

As such, the plaintiff was deceived into signing a document, the Employment Application, which contains a provision that attempts to remove some of her statutory rights as

5

an employee and does not even provide a neutral forum for the resolution of disputes.

## ARGUMENT

## I.

### THE ARBITRATION CLAUSE OF THE EMPLOYMENT APPLICATION IS VOID BECAUSE IT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE

**A.     Policy on Arbitration Agreements Contained in Employment Contracts**

Arbitration agreements are not *per se* unconscionable and both Congress and the U.S. Supreme Court have repeatedly stated that public policy generally favors the arbitration of disputes, where each party knowingly and voluntarily chooses to submit to such arbitration. In 1925, the Congress passed the Federal Arbitration Act (the "FAA") which facilitates the voluntary arbitration of disputes. 9 U.S.C. § 1 *et seq*. The U.S. Supreme Court has interpreted the language of the FAA, finding that the FAA promulgates a liberal policy favoring arbitration agreements. Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, the Supreme Court sounded a cautionary note in 1991 stating, in one of its leading decisions on arbitration clauses, that all agreements to arbitrate must be "knowing and voluntary." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 36, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

**B.     The Applicable Legal Standard For Compelling Arbitration**

The defendant correctly sets forth the four-pronged test promulgated by the Second Circuit as to whether a court should compel arbitration under an arbitration clause contained in a contract: "(1) whether there is an agreement to arbitrate; (2) the scope of that arbitration agreement; (2) whether federal statutory claims, if any are asserted were intended by Congress to be non-arbitrable; and (4) if only some of the claims are subject to arbitration, whether to stay the remainder of the proceedings

6

pending arbitration." Lehman Brief P.3 *citing* Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2nd Cir. 1998) (*citing* Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2nd Cir. 1987)). In this case, the first of the four prongs is not satisfied because there was no agreement *ab initio* to arbitrate.

**C.    The Enforceablility of the Employment Agreement Was Vitiated by Procedural and Substantive Unconscionability**

**1.    The Test for "Unconscionabilty"**

In deciding whether two parties have agreed to arbitrate a particular matter, ordinary state contract law principles of the forum state must be applied. First Options of Chicago, Inc. v. Kaplan, 514 US 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In this case, that is the law of the State of New York.

Under New York Law, in order for a contract to be "unconscionable" it must be both (1) procedurally unconscionable and (2) substantively unconscionable. Brennan v. Bally Total Fitness, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002).

A contract is procedurally unconscionable if "in light of all the facts and circumstances, a party lacked a meaningful choice in deciding whether to sign the contract." Id. at 382.

A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. Id. at 382.

**2.    The Execution of The Employment Application Was Induced by Deceit And Coercive Practices on the Part of Lehman and the Arbitration Clause Contained Therein Is Procedurally Unconscionable**

The defendant correctly observes in its memorandum of law that there is a presumption under New York law that a person who signs a document is presumed to know its contents and have agreed with the terms thereof. Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 46 (2nd Cir. 1993). However, this is a rebuttable presumption that may be refuted by a

7

showing of deceitful or coercive practices having induced the execution thereof. Id. at 46, Brennan at 381. In Brennan, in similar circumstances to this case, the Southern District of New York found that such was the case. Brennan at 382.

Congress passed the Federal Arbitration Act (the "FAA") in 1925 in order to encourage parties to settle civil disputes through arbitration, if possible. The intent of the FAA was to require "courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms" Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ. 489 U.S. 468, 478 (1989). However, the operative word in the Supreme Court's decision is "negotiated". In this case there was neither knowledge of the arbitration clause by the plaintiff nor any negotiation between the plaintiff and the defendant as to any terms thereof.

Even when the contract provision in question is legible it may be placed in such a way that it is not likely to come to the attention of the non-drafting party. In such case, a party may not be bound by such a provision. Egan v. Kollsman Instrument Corp., 21 N.Y.2d 160, 168-69, 287 N.Y.S.2d 14, 19, 234 N.E.2d 199, 202-3, (1967) *cert. denied*. Despite its import, Lehman purposely made the arbitration clause in its Employment Application inconspicuous (and did not have employees initial or acknowledge it) and then rushed the new hires to sign the document without reading or consulting.

It has been held that "failure to read an instrument is not negligence per se but must be considered in light of all the surrounding facts and circumstances." Chandler v. Aero Mayflower Transit Co., 374 F.2d 129, 136 (4th Cir. 1967).

3. **There Is Structural Bias in Lehman's Arbitration Clause Because It Deprives the Employee of a Neutral Arbitral Forum and Is, Therefore, "Unconscionable"**

Whether the arbitration system followed by securities firms, wherein employee and customer arbitrations are submitted to those firms' own trade organizations for adjudication is fair and

equitable or not is an issue which has been submitted to the Second Circuit, but upon which the court has not yet ruled. Halligan v. Piper Jaffray, Inc., 148 F.3d. 197, 203 (2nd Cir. 1998).

It is very clear that Lehman did not wish a neutral arbitral forum when it crafted its arbitration clause because it could just have easily designated the American Arbitration Association as the arbitral forum rather than the three SRO's which it did designate.

**4.    Summary**

The arbitration clause of Lehman's Employment Application is both substantively and procedurally unconscionable. It is substantively unconscionable because it does not provide a neutral forum for the arbitration of claims. It is procedurally unconscionable because its execution by the plaintiff was procured by heavy-handed and deceitful personnel practices on the part of the defendant. As such, the arbitration clause of the Employment Application is unenforceable under New York contract law and should be severed from the contract of employment.

**II.**

**PLAINTIFF HAS A RIGHT TO CONDUCT DISCOVERY
BEFORE THE ISSUE OF ARBITRABILITY IS DECIDED**

**A.    A Motion to Compel Arbitration is to be Treated Similar to a Motion For Summary Judgment.**

A motion to compel arbitration is "treated like a summary judgment motion," Goodman v. ESE America, Inc., 2001 U.S. Dist LEXIS 433 at 2 (E.D. Pa. Jan. 19, 2001), so that discovery is appropriate "to gather sufficient information to raise a material issue of fact," Patricia P. v. Board of Education, 203 F.3d 462, 469-70 (7th Cir. 2000).

9

B.  **Compulsory Arbitration, Like Summary Judgment, May Not be Granted Where There are Genuine Issues of Material Fact.**

Summary judgment may not be granted where there exist genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L.Ed.2d 265, 106 S.Ct. 25(1986). In this case, there exist genuine issues of material fact with respect to: (1) the coercive and overreaching methods used by Lehman to induce the execution by the plaintiff of the Employment Application; and (2) and also with respect to the neutrality of the three SRO's as arbitral organizations. "Under Rule 56(f), summary judgment may be inappropriate where the party opposing it shows that he cannot at the time present facts essential to justify his opposition. Fed R. Civ. P. 56(e) advisory committee's note (1963). In addition, "[t]he nonmoving party should not be "railroaded" into his offer of proof in opposition to summary judgment."" Trebor Sportswear Co., Inc.v. The Limited Stores, Inc., 865 F.2d 506, 511, n.3 (2nd Cir. 1989). Further, "[t]he non-moving party must have had an opportunity to discover information that is essential to his opposition to the motion for summary judgment." Trebor Sportswear at 511, *citing* Anderson v. Liberty Lobby, Inc. 477 US 242, 250, 91 L.Ed.2d 202, 106 S.Ct. 2505 n.5 (1986). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. Hellstrom v. U.S. Dept. of Veterans Affairs, 201 F.3d 94, 97 (2nd Cir. 2000), *citing* Sutera v. Schering Corp., 73 F.3d 13, 18 (2d Cir. 1995).

### III.

### PLAINTIFF'S ACTION SHOULD NOT BE DISMISSED BECAUSE THE DEFENSE HAS SET FORTH NO VALID REASON OR BENEFIT FOR DOING SO

Irrespective of whether or not the Court determines that this case should be sent to arbitration at this time, there is no valid reason to dismiss the case nor has the defense's memorandum of law offered one. A dismissal may cause the incursion of additional expense and filings by both sides at a

later date and even the defense concedes that this Court can simply place the case on its suspense calendar. If the Court were to compel arbitration in this matter, it would certainly be appropriate to stay the proceedings in the interim but there is no valid reason that has been offered to dismiss the case. As such, the Court is urged not to do so.

## IV.

## CONCLUSION

For all of the foregoing reasons, plaintiff, Doreen Benson, respectfully requests that the Court enter an order: (1) denying defendant's motion to compel arbitration of plaintiff's claims or, in the alternative, ordering that the arbitration be conducted through a neutral and unbiased arbitral body such as the American Arbitration Association; (2) denying defendant's motion to dismiss this action pending arbitration; (3) granting the plaintiff's request for discovery of the arbitral history of the three designated SRO's and (4) granting such other relief as the Court may deem just and proper.

Dated this 22nd day of February, 2005

**LEWIS D. THOMPSON**
**ATTORNEY AT LAW**

/S/
_____
Lewis D. Thompson (LT0786)
P.O. Box 403
Summit, New Jersey 07902-0403
(908) 273-0992
(908) 277-0404 Facsimile
Email: NJLAW6@aol.com

**Counsel for Plaintiff**

11

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DOREEN BENSON, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 04-CV-07323-DLC |
| | ) | |
| LEHMAN BROTHERS, INC., | ) | |
| Defendant | ) | |
| | ) | |

### AFFIDAVIT OF DOREEN BENSON

|  |  |  |
|---|---|---|
| STATE OF FLORIDA | ) | |
| | ) | |
| | ) ss. | |
| COUNTY OF PALM BEACH | ) | |

Having been first duly sworn I, Doreen Benson, do hereby aver and state as follows:

1. That I am of legal age and sound mind and reside in Wellington, Florida.

2. That I was employed as a broker in the Private Client Services Group at Lehman Brothers, Inc. ("Lehman") in New York, NY from November, 1997 until July, 2002.

3. That on the day that I commenced work at Lehman, in November, 1997, I was processed in a group of 12 to 15 other new hires.

4. That we were placed in a conference room at Lehman and each given a large stack of papers to sign.

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

5. That, with the exception of the health insurance forms, we were given no explanation of what any of the documents were or their particular significance.

6. That we were all pressured to sign the papers immediately without having had a chance to read or to understand any of the contents of any of these documents.

7. That no mention was made to us by the Human Resources personnel at Lehman of the inclusion of an arbitration clause in the Employment Application or its potential significance.

8. That no mention was made to us by the Human Resources personnel at Lehman that we could or should take our time and consult our own legal counsel before signing any of the documents in that room.

7. That, in summary, we were pressured to sign the papers and leave the room as soon as possible.

8. That one of these papers that we were pressured to execute so rapidly was Lehman's Employment Application (the "Employment Application") which contained, as I learned later, a provision mandating all disputes between Lehman Brothers and its employees to binding arbitration and that the arbitration provision contained in the Employment Application mandated that such arbitration only be conducted before three forums: The New York Stock Exchange, the American Stock Exchange, or the National Association of Securities Dealers ("NASD").

FURTHER THIS AFFIANT SAYETH NOT

    Dated this 22nd day of February, 2005.

    /S/
    _____
    Doreen Benson

    Signed and subscribed before me this _____ day of February, 2005

    _____

SEAL (notary seal)
    Notary Public
    My commission expires _____ ____, 200__

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

Document Produced by deskPDF Unregistered :: http://www.docudesk.com